The Court now calls Case 117-9501 West Bank N.A. Appley v. Standard Bank and Trust Company. Are you ready to proceed? Yes, Your Honor. May it please the Court, my name is John Wheeler and I represent the defendant, Standard Bank and Trust, as trustee. We stand before you seeking a final ruling as to who has the right to rescind under the Truth in Lending Act. Specifically under Section 1635A, it states that the abogor shall have the right to rescind. The issue before this Court is whether that right only lies with the parties who execute the note or are obligated on the note, or does it also include the parties who do not sign the note and are not obligated, but have an ownership interest in the property that's pledged as collateral for the consumer loan. Furthermore, there's the additional issue of whether if the ownership interest is in the form of a trust, be it a land trust or a living trust, does that trustee have standing to accept the disclosure notices required under the Truth in Lending Act and also to act upon those disclosures. The Truth in Lending Act is one of the pillars of consumer protection law. It was passed in 1968 and I have it right here. And when it was passed, it was really an outline form. Congress, knowing they had delegated broad authority to the Federal Reserve Board to issue regulations to give meaning and content to the Truth in Lending Act. Acting upon that responsibility, the Federal Reserve Board have issued Regulation Z and official commentary that give meaning and content and interpretate the act. The U.S. Supreme Court in the case of Ford and Woodard v. Mulholland in 1980 stated that a high degree of deference should be given to these regulations and that they should be dispositive of an issue unless they are demonstrably irrational. This court reinforced that principle in the 1986 case of Lanier v. Associated Financials where this court stated that the greatest respect should be shown to these regulations in the interpretation of the Truth in Lending Act. In this case, the appellate court in its majority ruling ruled that under Section 1635A that the right to rescind only allows lies with the abogor or people obligated under the note and does not lie with parties who have not signed the note or not obligated under the note but have pledged an interest, ownership interest in the property and security for the loan. But who is the abogor in the reverse mortgage? Well, as Justice Gordon said, the party, Mrs. Marinda, is not the abogor. She's not obligated to pay back anything. And my position is that the abogor is actually the party who pledged the most important asset, the real estate, and that would be the bank. They're the one taking the risk. When I say taking the risk, they have placed the position of the most important asset at risk. So I would say the abogor is the party whoever facilitated and actually put that property into play. So if that's true, is the TILA clearly, does it apply to reverse mortgages? How can the act be limited to abogors only? Well, I think with regard to the way I look at abogor is as to what is at risk. And in the Truth in Lending statute, abogor is not defined. I think one would have to go into the regulations, and when the regulations address it, I think abogor is really parties who are at risk in the transaction. And that is beyond people signing the note. It's the people who have put at risk the real estate with regard to the collateral for the loan. So to follow up on Justice Brooks' question, is your position that this would occur in every kind of situation or only in reverse mortgages? Every occurrence. All consumer transactions, this would apply. So the fact that she was not an abogor in the sense that we might usually think about a mortgage where she has to pay each month, that's not a factor here. It's the fact that the trust was on the mortgage is the key. The trust or an individual who has not signed the note. Right. The appellate court holding, it seems, is pretty broad, right? It would affect people such as spouses who are not co-signers on a mortgage, right? That's exactly the point that the amicus brief argued, and actually a case was overturned based upon this ruling. And it was an individual who didn't sign the note but was the owner of the property on it. And that is really the most important factor, I'd say, is with regard to who's taking the risk here. So regardless of whether we think you're entitled to relief, we should at least weigh in on the reasoning of the appellate court. The appellate court ruling was very broad. It opened the matter to any party who didn't sign the note but they have an ownership interest in the property. The way the appellate court ruling is that they don't have the right to rescind. And that's not the intention of it. The intention is to broaden to anyone who has an ownership interest. With regard to mortgage financing has changed dramatically since 1968. In 1968, there was no such thing as a credit score. Today, it's the most important factor with regard to whether a loan is going to be approved. Today, because of either poor credit or want to preserve the usage of the credit, people will not sign the note. In 1968, land trusts were used, but living trusts were not that frequent. Today, having property in trust is a common way of holding title. In short, having a non-obligor owner is a commonplace factor in today's real estate market. The regulations do answer the question as to who has the right to rescind if one is a non-obligor. Specifically, Regulation C says that in a consumer transaction where a security interest is taken against a consumer's principal dwelling, comma, each consumer who has an ownership interest that is subject to that security interest shall have the right to rescind. And I would offer the phrase a consumer's principal dwelling. That is a precondition. That's a qualifying statement. Once that is satisfied, then each consumer that has an ownership interest shall have the right to rescind. Mr. Wheeler, do we ask the questions such as who pays the taxes, who pays the insurance, the trustee through the Trust for Mary? Do we ask those kinds of questions? And what benefit would you receive if you are allowed to rescind? Well, those are factors, I think, with regard to, if I understand it correctly, with regard to the ownership factor on it, whether you have control of the property on it. But I think the most major factor is that if you're obligating that property by executing trust and notes agreements, that puts that property at risk to the loan. More and more important than who's paying the taxes, who's signing the note, who's signing the mortgage. Another way of saying this is that if a security interest is taken against the principal dwelling of one consumer, then everybody else who has an ownership interest has the right to rescind. And I would submit that is the same reasoning and distinction that Justice Gordon made in his dissenting opinion. And in that dissenting opinion, he took the first sentence of Section 1335A and broke it down in detail. And he came to the conclusion where he stated that the principal dwelling of a person to whom credit is extended is different than the obligor. He says there are different people, they're not interchangeable. If the drafters meant to have them be the same people, then it would just would have said principal dwelling of the obligor. And this makes perfect sense because who takes the greatest risk in a consumer loan transaction? It's not the person that signs the note. It's the person who has obligated the real estate to that loan because in reality the first and last avenue of recovery for that lender is the real estate. Yes, there can be a deficiency judgment against that note holder, but in reality that is sold to a collection agency for two to three cents on the dollar. This property has been sold now, correct? That's correct. What interest is left for you? Damages, actual and statutory damages. What actual damages? We had at the trial hearing, we had the funds fully pay back the principal on it. So part of the damages would be either the value of the property then to us now or lost rent. Generally, actual damages are not a factor in these matters. This is very unique in that you had the client have the funds at the hearing on exercising the right to rescind to pay back the lender on it. If the actual damages are not at work in this case. So what is your interest? The interest you bring back, the damages would be going back to the original status quo prior to the loan being made. Refund of the origination charge, the broker fee, the closing cost, the interest. The idea with the right of rescission, you bring the parties back to the original start. It's just not rescission of the security interest. It's the rescission of the transaction. And it is clear that under Section 1640A, actual and statutory damages are allowed. My experiences with land trusts is over many years, I've prepared many trust agreements. They are an ideal vehicle for an elderly person who wants to buy property whose only asset is the real estate. They're simple, inexpensive. They're a poor man's living trust. And then in these trust agreements, every one there's a section saying where are legal notices to be sent to. And commonly the client will say, I don't want to bother reading legal notices or I won't understand it. And they will appoint somebody else, son, daughter, somebody else in confidence to receive those legal notices. By the legal notices not being sent to the trustee, you're avoiding that protection inherent in the trust agreement. You're not allowing that trustee to exercise his fiduciary duty to send those documents to the proper parties. And the land trust, the official staff commentary recognizes the special position that land trusts have. And in the regulations, it states that credit extended to a land trust shall be credit extended to a natural person. In the case of Amanti versus Indian Mac Bank, which came out of the federal court in Hawaii, the issue before the court was, does a trustee of a living trust have standing to exercise rights in the Truth in Lending Act? The court looked at the regulations and they noted that there's nothing that addressed directly as to a living trust, but it did to a land trust. And they noticed that land trusts are considered a natural person. In that court rule, that's a rational position. And because land trusts and living trusts are similar in function, they extended the right to a trustee in a living trust to exercise the rights in the Truth in Lending Act. The plaintiff had three choices here. They could decide not to make the loan, make the loan subject to taking it out of the land trust, or make the proper disclosures. They elected not to take any of those safe harbor provisions. A mistake was made. This is a strict liability statute. And that's why you get uniform compliance within the industry. But what we have before us is not a technicality. It is a fundamental error. They did not send notice to the legal equitable title holder to this property. And we should expect the highest sense of accountability to anybody who is dealing with a consumer dealing with the most important financial question of their life regarding their most important asset. The plaintiff has argued that because the property has been sold, this is moot. And I would, with regard to that issue, on 1635F, it states that the right to rescission will expire once the property is sold or upon three years, whatever comes first. By any reason, the defendant has timely and completely exercised its right to rescind. They timely gave notice of rescission. They timely filed their counterclaim for the rights of rescission. And they exceeded the requirements by having the funds in court by cashier's checks payable to the plaintiff for the amount of the principal balance of loan, which are on the Appendix A through 3738 are copies of the checks. We agree it's moot. We agree it's moot. We agree it's moot. We agree it's moot. We agree it's moot. As to the release of security interest, but this is the damage issue. That still remains because you have to bring back the parties back to the status quo prior to the loan. Refund of the origination charge. Refund of the brokerage fee. Refund of the closing costs. Refund of the interest. That is the law. That's how we get uniform compliance. In addition, the plaintiff has argued that the right to damages is not a statutory right. And with regard to whether there was a waiver of the statutory right to damages on it, I would defer to my argument in the brief on pages 21 and 22. And we would respectfully request that the appellate court and the trial court decisions be reversed. Thank you. Thank you very much. May it please the court. My name is Lou Manetti. I represent Plaintiff Appellee, One West Bank, N.A. Your Honor, Standard Bank and Trust Company's theory here rests on the incorrect claim that a condominium unit was Standard Bank's home. Standard Bank doesn't dispute that it's an Illinois state bank. Mr. Manetti, I anticipate your argument is going to be that the defendant should not be in a condominium. Do you agree with Mr. Wheeler as to the breadth of the appellate court reasoning? And regardless if we agree with your argument or not, are you in agreement that we should rein in some of that language? Your Honor, I certainly don't think that the holding of the appellate court goes towards rights that might be impacted by spouses who don't sign the note. Again, the holding of the court here was that this broad exculpatory language in the note and the mortgage signed by Standard Bank. And as a factual matter, Standard Bank actually signed the note in this case. So as a simple factual matter, it's not really speaking to a scenario where an owner doesn't sign the note. But it's certainly not reached by these facts here. The necessary condition to rescind, that is, being the principal dwelling, the property being the principal dwelling of the person rescinding, clearly wasn't met here. Excuse me, Mr. Manetti, but Mary didn't sign the mortgage or the trustee, and the note is on the property. It's only, I think, signed by Mary, but there is a line for the trustee. Isn't that correct? I believe the note was signed by both, Your Honor. The mortgage was signed by Standard Bank and Trust and not Ms. Murida, and the note was signed by Ms. Murida and Standard Bank and Trust, if I recall correctly. Toward Your Honor's second point, regarding the reference to spouses who don't sign the note, occurs in two occasions in the opinion. Once in the body of the opinion and once in a footnote. But both are dicta. Both reference alien jurisdiction cases where it was discussed about spouses who don't sign the note and their specific rights under TILA. And so it doesn't go to the holding of the appellate court. Now, whether or not this court should speak to that, I don't know. But I do know that it was deliberate, and it meant a very specific thing when used in that statute, and that the use of consumer, the more broad, the more encompassing word in Regulation Z and the commentary is a rewrite of the specific word obligor in TILA. I can't dismiss that possibility. And I direct Your Honors to the Smith-Pena case cited by the appellate court, where there's a very extensive and robust discussion about the meaning of obligor and its interaction with consumer, and even the history of TILA and congressional hearings about who this protects. And so I do think that would support at least, and again, I don't think it needs to be reached here, but it does support the notion that obligor is a specific word that meant something different from consumer in Regulation Z. Now, it's undisputed in this case that the property was a condominium unit in Murata, who passed away in 2010. The issue presented by Standard Bank in this case is nothing more than the attempted rescission by a party who didn't have the right to rescind. And at the outset, I guess I should comment on the characterization that this case is about the standing of a land trustee to bring claims under the TILA. The Hawaii case that was cited by the defendant in their reply brief, it had to do with whether or not the trustee had standing to move on behalf of their beneficiaries. But that's clearly not the case here. Here, there were two parties at the origination, other than the originating lender, Marquette Bank. There was Ms. Murata, and there was Standard Bank. The record shows Ms. Murata got her disclosures. So this isn't a case about whether or not Standard Bank has the right to enforce those rights, Ms. Murata's rights, in the loan. They're, in a very real sense, saying that they, individually and separate from Ms. Murata's right to receive rescission disclosures, should have received their own. And it's on the basis of that alleged violation that they're claiming TILA damages and rescission. So they are very much proceeding on their own individual rights to rescission disclosures. And clearly, the language of TILA states that they are not entitled to. A party can only rescind if the security interest is taken in the principal dwelling of a person. Both TILA and Regulation Z articulate this. TILA says that in a transaction where security interest is or will be retained in the principal dwelling of the person to whom credit is extended, then the obligor can rescind. Regulation Z echoes this requirement with very slight variation. It says that where security interest is retained in a consumer's principal dwelling, then each consumer whose ownership interest is retained in the principal dwelling of the person to whom credit is extended can rescind. So both TILA and Regulation Z preface the ability to rescind as only applying in situations where that security interest is in the person's principal dwelling. In fact, this is reinforced by Regulation Z itself. It initially defines consumer as the person to whom credit is extended. Then it slightly expands that and says, well, for the purposes of rescission, the person, it expands consumer to the person in whose principal dwelling a security interest is retained if that person's ownership interest in the dwelling is subject to the lien. So you see two necessary conditions to be able to rescind under the TILA, under TILA or Regulation Z. One, ownership in a dwelling, and two, that that dwelling is your principal dwelling. Nowhere is this more clear in the statutory scheme of TILA than the official staff commentary itself in Reg Z. It says that for rescission, a consumer includes a natural person whose ownership interest in his or her principal dwelling is subject to the risk of loss. Thus, if a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, A is a consumer for the purposes of rescission. And this clearly plays out as a right to rescind whether or not the property was principal dwelling. This plays out actively in litigation in the Hopper case cited by plaintiff in its brief in the Northern District. There, the court immediately notes that one of the three named plaintiffs can't bring a count for rescission because the property that they're trying to effect rescission on wasn't her principal dwelling. And for that reason, at the very beginning of the opinion, it strikes her count as to rescission. And Standard Bank's counterclaim acknowledges this notion of principal dwelling in its counterclaim. They state that in the case, at least when they pleaded their counterclaim, they had this notion that they had to be talking about a principal dwelling or principal residence in order for a well-pleaded counterclaim for rescission to lie. Now, the notion that this was Standard Bank's principal dwelling is flatly contradicted by the record. The deed that placed them in title as land trustee accurately notes that their main office is on 95th Street in Hickory Hills. Also, the mortgage says a trustee is not considered an occupant for the purposes of the loan and, in fact, shouldn't be considered as having a principal residence for the purpose of the mortgage, no. And more broadly, regarding the occupancy of a land trustee in general, this court has stated as far back as 1979 that when we're talking about ownership interests in land trustees, that it doesn't have one fixed meaning that's applicable under all circumstances and that, in fact, the only aspect of ownership a fair legal title, control, occupancy, these rights of ownership go to other parties who are not the land trustee. So Standard Bank's argument on appeal cannot ultimately be successful, even if it could convince your honors that it was, its argument on appeal is basically the appellate court incorrectly held that obligor controlled over consumer and that under consumer, it should have been regarded as a consumer under Regulation Z, the more broad definition. But even if it could convince your honors that it was an obligor or consumer, it couldn't, under any set of facts, show that it was an obligor or consumer in a transaction where the security interest was in its principal dwelling. This is a necessary condition for a party to be able to rescind. And as a result, there's no effective relief that Standard Bank could be given in this case. They're effectively asking your honors to craft an opinion that goes well beyond the facts presented in this case. Did you have any recourse against Mary personally? No, your honor. The structure of reverse mortgages is that if there's any money owed, it comes from the property itself. And responding to Standard Bank's specific interpretation of Regulation Z, that as long as one, if there are multiple owners, as long as one owner has the property as their principal dwelling space, then all owners enjoy the right to rescind. This can't be a fair interpretation of Regulation Z. Regulation Z, it clearly distinguishes between consumers who can rescind and consumers who can't. And so merely having one of several owners have the property as their principal dwelling space means that all the owners enjoy that. It isn't contemplated by Regulation Z. And in fact, the specific mandate in the official staff commentary directly undermines this, where they say if the property is owned by the party and that property is their principal dwelling space, you can rescind. Nowhere in Regulation Z is it contemplated that so long as one owner has that property as their principal dwelling space, all owners, regardless of where they reside or where they occupy, can rescind that transaction. It's not contemplated by the statute. Turning to the central holding of the appellate court. The appellate court central holding was correct. It held that Standard Bank was not an obligor under the TILA. This is abundantly apparent from the record. For instance, the mortgage writer attached to the mortgage states that Standard Bank is not taking on any interest to pay or any covenant, either expressed or implied, and if there are any conditions that need to be met, look solely to the premises and not Standard Bank. Similarly, both the note and mortgage have identical stamped exculpatory clause. That say that Standard Bank is not taking on any liability or obligation whatsoever. And this rejection of any responsibility or obligation alone actually comports with TILA's treatment of land trustees as parties to mortgage transactions. It says, counsel's correct, that it says that land trustees are natural persons, as far as the TILA's concerned. But they describe land trustees in Regulation Z as a mechanism and also state that they hold bare legal title to the transaction and that the purpose of the transaction is for household or family purposes. TILA will apply because in substance, if not in form, consumer credit is being given. So it doesn't view land trustees as materially distinct actors in these types of transactions. And this undermines Standard Bank's claim about how it enjoys rescission rights. It claims that it enjoys rescission rights because natural persons can rescind and land trustees are natural persons under TILA. Ignoring the fact that this ignores the dual necessary conditions of ownership and that the property be the principal dwelling of the person rescinding, how trustees are characterized under TILA is not to protect land trustees. It's to prevent the transaction from being characterized as one with an organization, in which case TILA's consumer protections wouldn't apply because it wouldn't be a consumer transaction. So it's not to protect or give consumer rights, protection rights, to a trustee. It's to preserve the consumer protection rights in the actual person, the actual person for whose benefit the transaction is being undertaken. In this case, Ms. Murata. It was to protect her rights, not to provide any added benefit or protection to Standard Bank. Since the broad exculpatory language in the mortgage and the note left Standard Bank with no reciprocal obligations under the loan, the appellate court's holding was essentially correct. And that central holding is what's on appeal for this case. Unless there are any questions, for those reasons, the judgment of the appellate court should be affirmed. Thank you. It still doesn't address the issue. Notice was not given to the trustee. What if Ms. Murata was not the beneficiary of the trust? What if there were multiple beneficiaries? What if that notice was supposed to be sent to somebody else? The rule of the law cannot be no foul, no harm. That can't be it. The law is you're supposed to send notice to the title holder on it. These are not difficult rules. I would not expect a loan processor to know that a land trust is a natural person. But I would expect them to know, send notice to the note holder, send notice to the title holder. These are not difficult rules. They're not confusing. If you follow those rules, you have a safe harbor and there's no issue. That was not done here. The rule of law, we cannot have loan processors now interpreting what is in the trust agreement, who is entitled to notice. It would be confusion in the real estate market on it. And land trusts are now in the first court in 1893 in a court decision. And they are now in nine states, California, Ohio and Florida being among them. What we're asking of the plaintiff to do is very simple. Send the proper notice. And that was not done. And let it not go unnoticed that those notices were prepared. And the rescission notices were prepared for the benefit of the plaintiff. And the appendix 40-45 in my brief. With the issue of whether there's reciprocal obligations, I would say that the greatest obligation here is the fact that the one who had the greatest obligation was the putting the most important asset at risk. And that's what was done through using standard bank as the medium. Sir, can you respond to the argument about the plain language of the statute, the TILA statute that speaks of the principal dwelling of the person to whom credit is extended? That goes back to that's a qualifying statement. What do you mean? I'm sorry, Your Honor. You mean with regard to in the Truth in Lending statute? Mm-hmm. Section 1635A of TILA says, except as otherwise provided in the section, in the case of a consumer credit transaction in which a security interest is or will be retained or acquired in any property, which is used to as the principal dwelling of the person to whom the credit is extended, the allegor shall have the right to rescind the transaction. And the argument that was repeated a number of times by opposing counsel was, this is not the bank's principal dwelling. I would go back to what Justice Gordon said in his dissenting opinion. You're talking about two different parties. That if you're talking about the person to whom credit is extended, the principal dwelling, if they were not, if they were the same persons, the drafters would have said the principal dwelling of the allegor. But it doesn't say that. It goes from principal dwelling of the person to whom credit is extended, comma, then allegor. They're two different people. And that's the basis of Justice Gordon's dissenting opinion. And who could that be? Well, one, I always look, who takes the greatest risk? It's the party pledging that real estate. It's not the note holder. Narrowing the allegor to just the note holder, that's the party that will not feel the full impact of a foreclosure proceeding. In conclusion, this setting is most fitting for reference to Winston Churchill as a personal hero of mine. And in my legal career, this is my finest hour. So thank you for the opportunity and for the honor to be here. Thank you. Thank you.